## EDMUND STALTER, PLAINTIFF, v. WILLIAM C. ARNDT AND ROSE ARNDT, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 21, 1962.

*Mr. Joseph M. Harrison* for plaintiff (*Messrs. Murphy and Skelley,* attorneys).

*Mr. James A. Major* for defendants (*Mr. Thomas S. Clancy,* attorney).

COLLESTER, J. S. C. Plaintiff Edmund Stalter sues to enjoin defendants William C. Arndt and Rose Arndt from interfering with plaintiff's easement over a part of the defendants' land. The pertinent facts are as follows:

On October 13, 1890 Elizabeth and William Ruga, her husband, conveyed to Jean Westervelt and Benjamin Westervelt, her husband, a tract of land fronting on Sylvan Avenue in the Borough of Englewood Cliffs. Sylvan Avenue runs in a general northerly direction at this point. The property extended 302 feet easterly in depth to the westerly boundary of property of DeMott or Irving.

On September 14, 1900 Jean and Benjamin Westervelt conveyed to their son Daniel Westervelt the easterly half of such tract. The deed contained the following reservation:

"Together with a right of way out to Sylvan Avenue eight feet in width, said right of way to be used as such only until an avenue shall be laid out along the within described lot's easterly end when the said right of way shall cease."

On February 27, 1917 Jean Westervelt died testate and her son Daniel thereupon became the owner of the westerly half of said tract. Thus Daniel owned the entire tract as originally conveyed by Ruga to his parents.

On July 20, 1920 Daniel Westervelt and Doretta, his wife, conveyed the westerly half of the tract fronting on Sylvan Avenue to defendant William C. Arndt. Said deed contained the following reservation:

"*Saving and reserving to the said parties of the first part the right of egress and ingress over a strip of land eight feet wide along the Southerly side of said described premises.*" (Emphasis added)

Thereafter William C. Arndt, through *mesne* conveyances, caused title to the westerly parcel to be conveyed to himself and his wife Rose Arndt, as tenants by the entirety. Such deeds recited that said property was subject to the eight-foot right of way reserved in the Westervelt deed.

On February 14, 1929, a question having arisen and having been resolved concerning the depth of the Arndt property, a correction deed was executed by Doretta Westervelt, then a widow, to the Arndts which corrected the depth of the property heretofore conveyed to 136 feet instead of 120 feet. This deed contained the following reservation:

"Saving and reserving to the said party of the first part, *her heirs and assigns,* the right of egress and ingress over a strip of land eight feet wide along the entire Southerly side of said described premises." (Emphasis added)

Some time thereafter defendant William C. Arndt protested to Joseph Cook, Mrs. Westervelt's attorney, concerning the use of the words "her heirs and assigns" in said deed. Cook did nothing about it and Arndt then retained Thomas S. Clancy as his attorney. Mr. Clancy went to see Mrs. Westervelt concerning the language in the correction deed, stating Arndt's objections. She referred him to Mr. Cook stating, "You see Mr. Cook and if he tells you it can be changed, why you change it, *but that is my intention as the original deed was written."* (Emphasis added)

Thereafter new deeds were drawn by Mr. Clancy which were executed on March 4, 1930: the first, from William C. Arndt and his wife to Doretta A. Westervelt, a widow, followed by a deed on the same date from Doretta A. Westervelt to William C. Arndt and Rose Arndt, his wife. This last deed contained the same language for the reservation of the eight-foot strip as set forth in the *original deed* from Daniel and Doretta Westervelt to Arndt ten years earlier.

On September 27, 1953 Doretta A. Westervelt died testate devising her property to her daughter Helen Westervelt Stalter. On January 23, 1960 Helen Westervelt Stalter died testate devising her property to her husband Edmund Stalter, plaintiff in this action.

Plaintiff Edmund Stalter has resided in the Westervelt home for the past 38 years following his marriage to Helen Westervelt. The evidence shows that the easement over the Arndt property, eight feet in width, extends along the southerly side of defendants' property to the westerly line of plaintiff's property. Gas and water lines extend from Sylvan Avenue below the surface to plaintiff's home in the rear of the Arndt property, and electricity is provided by an overhead line through the strip.

On December 22, 1960, seven years after the death of Doretta A. Westervelt, defendants locked a gate across the eight-foot strip and barred plaintiff's right of ingress and egress to his home. An *ad interim* restraint enjoining defendants' action was entered by the court pending final hearing.

Plaintiff contends that he has a permanent easement over the eight-foot strip extending along the southerly side of defendants' property under the language of the 1920 deed of conveyance to Arndt, and further alleges that he is also possessed of such an easement by way of necessity since he has no other means of ingress or egress to his property.

Defendants deny plaintiff's contentions, alleging that the easement over their property terminated upon the death of Doretta A. Westervelt on September 27, 1953. They further contend that plaintiff is not landlocked but has a right of ingress and egress to his property through Fifth Street, which borders his property on the east.

I.

I am satisfied that plaintiff does not have a lawful method of ingress or egress to his home through Fifth Street. The evidence shows that in 1891 Alfred G. Sage,

then owner of a large tract of land adjoining what is now plaintiff's land on the east, filed a map of his property in the office of the Bergen County Clerk. Said map laid out a street designated as "Fifth Street," which ran north and south parallel with Sylvan Avenue along the easterly line of the property of plaintiff and other adjoining landowners. The map indicated that the easterly half of the proposed street, 15 feet in width, was owned by Sage. The westerly half of said street was owned by plaintiff's predecessor in title and others who did not join in such purported dedication of Fifth Street.

The "street" consists of unimproved land containing uncultivated growth, bushes and trees. At the northerly end it is blocked by a residence. It extends southerly 500 feet to the Borough of Fort Lee. Only the strip of 15-foot width has been dedicated by filing of the Sage map, and the municipality of Englewood Cliffs has never accepted the "street" as a public street.

While the filing of the map by Sage in 1890 may have constituted a dedication of the 15-foot strip which extends along the easterly boundary of plaintiff's property, until there is acceptance of a dedicated street by some municipal act or public usage the public acquires no right therein. *Booraem v. North Hudson County R. R. Co.,* 40 *N. J. Eq.* 557 (*E. & A.* 1885); *Hercules Trust Estate v. Gauzzi,* 117 *N. J. Eq.* 565 (*Ch.* 1935); *J. M. Lehmann Co., Inc. v. S. B. Penick Co., Inc.,* 24 *N. J. Misc.* 375 (*Ch.* 1946).

In the meantime, the lands made subject to public easement by the action of the owner remain in possession of said owner and he may use them in the same manner as if no dedication had been made until the public demands possession for the purpose of enforcing the public right. Conceivably, there is no certainty that the public will ever accept such dedication.

Since "Fifth Street" is not a public street, plaintiff has no lawful right to use the same. Thus, unless plaintiff is

lawfully entitled to use the easement over defendants' land, he is landlocked.

## II.

 It is undisputed that when Daniel Westervelt and Doretta, his wife, conveyed the westerly half of their property to defendant William C. Arndt on July 20, 1920, they retained in said deed an easement of ingress and egress to their property over Arndt's tract to Sylvan Avenue. Plaintiff contends that he has a permanent easement over said strip. Defendants contend that the easement terminated on the death of Doretta Westervelt on September 27, 1953. Their position is that since the reservation in the Westervelt deeds to the defendants reserved the right of ingress and egress to the "parties of the first part," *viz.*, Daniel and Doretta Westervelt, said easement was for the lives only of such grantors and did not pass to their heirs or devisees.

 A permanent easement appurtenant to land may be acquired by a grantor by a clause of reservation, when it appears that such was the intention. When, therefore, it appears that it was the intention of the parties to create or reserve a right, in the nature of a servitude or easement in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land retained by the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land. Thus, where the reservation is of an easement for the benefit of other property of the grantor, the estate of the grantor in the easement reserved is commensurate with his estate in the property to which it is made appurtenant, although no words of inheritance were used. *Pipe Line Co. v. Delaware, L. & W. R. R. Co.*, 62 *N. J. L.* 254, 274 (*E. & A.* 1898).

In *Pipe Line Co., supra,* the successor in title to the grantor relied upon a reservation contained in a deed to the defendant railroad company made by the grantor, Stewart, whereby the company agreed to erect and maintain a wagon road or crossing under the railroad bed to run from lands owned by Stewart on both sides of the railroad bed conveyed. The court stated, at *page 274*:

"The grant, in terms, is to Stewart, without the word 'heirs' or words of perpetuity. Such a grant, by the common law, would create only a personal right for the life of Stewart. Where the right is granted in a deed in the nature of a reservation, and it is manifest from all the recitals in the deed on the subject that the plain purpose of the parties was to create a right for the benefit of the parts of the whole tract which had been severed by the conveyance, the grant will be construed as creating an easement appurtenant to the premises, and will pass as such without the word 'heirs,' at least in equity."

See *Couderl v. Sayre,* 46 *N. J. Eq.* 386, 395 (*Ch.* 1890); *Hagerly v. Lee,* 54 *N. J. L.* 580, 583–586 (*E. & A.* 1892); *Steiner v. Peterman,* 71 *N. J. Eq.* 101, 102 (*Ch.* 1906).

When Daniel and Doretta Westervelt conveyed the westerly half of their property to defendant Arndt in 1920 it is clear that the only lawful manner of ingress and egress to the easterly half of the tract retained by them where they maintained their home was through the right of way over Arndt's property. Considering the language of the reservation, the landlocked location of the property and the surrounding circumstances in 1920, namely, that the grantors resided in the easterly tract, it is my opinion that it was the intention of the parties at that time to create an easement appurtenant to the Westervelt property. Such an easement is not a personal right which is extinguished upon the death of the holders thereof. It passes by devise without words of inheritance having been contained in the reservation in the deed.

I am further satisfied that if no reservation had been contained in the 1920 deed, there would have been an im-

plied easement of ingress and egress held by the Westervelts over the Arndt property. See 5 *Restatement, Property, sections* 474 and 476; *Kelly v. Dunning,* 43 *N. J. Eq.* 62 (*Ch.* 1887, affirmed 46 *N. J. Eq.* 605 (*E. & A.* 1890); *Toothe v. Bryes,* 50 *N. J. Eq.* 589 (*Ch.* 1892); *Taylor v. Wright,* 76 *N. J. Eq.* 121 (*Ch.* 1909); *Jancisin v. H. F. Realty Co., Inc.,* 8 *N. J. Super.* 568 (*Ch. Div.* 1950).

### III.

The defendants rely upon the conveyances in 1930 to show that the easement was terminated in 1953 upon the death of Doretta Westervelt. Unquestionably Arndt did not desire his property to be subject to a permanent easement and he sought to eliminate this possibility in the transaction with Doretta Westervelt in 1930 when his attorney persuaded Mrs. Westervelt to execute the deed of March 4, 1930. However, I am not satisfied by the evidence that his objective was accomplished.

If Mrs. Westervelt had intended to terminate the easement upon her death, the deed drawn by defendants' attorney could have so stated. Instead it is clear that Mrs. Westervelt insisted that the language of the reservation in the 1920 deed be the language contained in the 1930 deed.

I seriously doubt that it was Doretta Westervelt's intention in 1930 to landlock her property upon her death so that her daughter Helen, to whom she was to devise the property and who lived with her together with plaintiff, Helen's husband, would have no way of ingress or egress to the family home. The testimony offered in support of this contention is not clear and convincing.

I am satisfied from the evidence that a permanent easement over the defendants' property was created by the reservation in the original 1920 deed to Arndt and that it was not terminated upon the death of Doretta Westervelt.

An injunctive order will be granted restraining the defendants from interfering with plaintiff's proper use of the

right of way leading from Sylvan Avenue to plaintiff's property in the rear.

An appropriate judgment consented to as to form or settled upon notice pursuant to *R. R.* 4:55–1 will be presented.